Filed 9/14/16  Havasu Lakeshore Investments v. Fleming CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HAVASU LAKESHORE INVESTMENTS, LLC, | |
| Cross-complainant and Appellant, | G051963 |
| v. | (Super. Ct. No. 30-2011-00487736) |
| TERRY L. FLEMING, SR., Individually and as Trustee, etc. | O P I N I O N |
| Cross-defendant and Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Donna Bader and Teeple Hall, Grant G. Teeple, Gregory M. Garrison, Frederick M. Reich and Julia M. Williams, for Cross-complainant and Appellant.

Law Office of Randall S. Waier and Randall S. Waier for Cross-defendant and Respondent.

\*        \*        \*

After the court entered judgment in favor of Havasu Lakeshore Investments, LLC (Havasu) on Havasu's constructive fraud claim against Terry L. Fleming, Sr., Havasu moved under Civil Code section 1717 for an award of attorney fees against Fleming Sr.  Havasu predicated its motion on a contract clause which provided for attorney fees to the prevailing party in an action "to enforce the terms" of the contract or "to declare rights" thereunder.  The court denied Havasu's attorney fee motion, ruling that Havasu's constructive fraud claim neither enforced the terms of the contract nor declared any rights thereunder.

Havasu now appeals from the court's order denying its motion.  For the reasons discussed below, we affirm the court's postjudgment order.

FACTUAL AND PROCEDURAL HISTORY[1]

Litigation in this case began in June 2011, when Terry L. Fleming, Jr. (Fleming Sr.'s son) sued Jean Victor Peloquin.

Peloquin, Havasu, Capital Source Partners, and J. Victor Construction, Inc. (cross-complainants) filed a cross-complaint against cross-defendants including Fleming Sr. (individually and as trustee of a trust).  After amendments of the cross-complaint, the third amended cross-complaint (TACC) became the final iteration of the claims against Fleming Sr.  Although the TACC set forth causes of action against Fleming Sr. for (1) breach of contract, (2) breach of fiduciary duty, (3) fraud, (4) constructive fraud, (5) declaratory relief, and (6) quiet title, the case was submitted to the jury *only* on Havasu's

---

[1]     We deny Havasu's opposed motion for judicial notice because the exhibits are not relevant to the reason for our affirmance of the court's order.

fourth cause of action against Fleming Sr. for constructive fraud.  Havasu prevailed on the constructive fraud claim and subsequently sought attorney fees against Fleming Sr.[2]

*The TACC's general allegations*[3]

The TACC contained the following general allegations.

Havasu was created as an entity to own and manage Vista Del Lago, a recreational mobilehome park (the Park).  Under Havasu's operating agreement (the Operating Agreement), Havasu was managed by Capital Source Partners (the Manager).

In November 2004, pursuant to an agreement for admission of members and transfer of membership interest in Havasu amendment to Operating Agreement (the Admission Agreement), Fleming Sr. and Fleming Jr. became members of Havasu.  The other members were the Manager and two other companies.

In January 2005, Havasu borrowed $8.4 million from Downey Savings. The loan was guaranteed, inter alia, by Peloquin, and secured by a deed of trust on the Park.  In February 2009, Havasu defaulted on the loan and entered into negotiations with U.S. Bank (Downey Savings' successor) to reduce the loan's principal amount.

In December 2009, Fleming Sr. proposed to Peloquin and Fleming Jr. that the loan should be purchased at a discount, and the Park property foreclosed on and placed into a new entity.  The Manager agreed to Fleming Sr.'s proposal and authorized him to contact U.S. Bank as the Manager's agent to negotiate the Downey loan.  Only the

---

[2] Although the appellate record does not reflect how other causes of action in the TACC against Fleming Sr. were resolved, the parties agree that only Havasu's constructive fraud cause of action was submitted to the jury and only against Fleming Sr. Havasu's opening brief states that, prior to trial, Havasu dismissed all causes of action against Fleming Sr. other than the constructive fraud claim.

[3] We follow the parties' lead by stating the facts as alleged in the TACC. The reporter's transcript of the trial is not a part of the record on appeal.

Manager or its authorized agent was authorized to negotiate the Downey loan with U.S. Bank.

But Fleming Sr. negotiated with U.S. Bank on his own personal behalf, rather than on behalf of Havasu or its members. He offered to purchase the Downey loan from U.S. Bank for $2.2 million, but did not disclose the offer to Havasu, the Manager, or Peloquin, even though Peloquin asked him whether progress had been made in the negotiations.

In April 2010, Fleming Sr. bought the Downey $10.2 million "promissory note and deed of trust for the substantially discounted amount of $2.2 million," and caused a notice of default and election to sell to be recorded. Cross-complainants were informed and believed that Fleming Sr. bought the Park property at the trustee sale with a bid "at or below the face value of the Downey promissory note, requiring him to pay nothing more to purchase the property." Fleming Sr. then transferred title to the Park property to Havasu Landing, LLC.

The TACC attached as exhibits and incorporated by reference the Operating Agreement and the Admission Agreement (the contracts). Section 7.15 of the Operating Agreement provided in relevant part: "Prospective Business Opportunity. The Manager and its . . . Agents . . . shall be obligated to present any investment opportunity or Prospective Economic Advantage to the Company and its Members that affect and/or involve the [Park property]. Any investment opportunity/Prospective economic advantage shall be offered in writing to the Members on the same terms and conditions as obtained by the Manager. This provision restates the Manager's fiduciary duties to the Company and its Members."

Paragraph 10 of the Admission Agreement provided in relevant part: "Attorneys Fees. If either party to this Agreement shall bring any action [or] counterclaim . . . for any relief against the other . . . to enforce the terms hereof or to

4

declare rights hereunder . . . , the losing party shall pay to the prevailing party a reasonable sum for attorneys fees . . . ."

The Admission Agreement provided that it amended the Operating Agreement and controlled in the event of a conflict between the two documents.[4]

*The TACC's constructive fraud allegations*

The TACC's constructive fraud cause of action contained the above general allegations and further alleged the following:

Due to the "fiduciary relationship that existed between Fleming Sr., as the agent for [the] Manager, on the one hand, and [Havasu] and its Members on the other, Fleming Sr. had an affirmative duty to refrain from taking any action adverse to the interests of [Havasu] and/or its Members or to mislead [Havasu] and/or its Members by failing to disclose material facts that affected the Park property."

Fleming Sr. engaged in fraudulent conduct by, inter alia, agreeing, in December 2009, "to act as the agent for [the Manager] for purposes of negotiating with U.S. Bank for the purchase of the Downey loan for the benefit of [Havasu] and its Members." He also failed to disclose to Havasu or its members his offer to U.S. Bank to purchase "the Downey loan at a substantial discount on behalf of himself personally and not in his capacity as the agent for" the Manager. He purchased the loan from the Bank "without making a written offer to [Havasu] or its Members giving them the opportunity to participate in the purchase." He foreclosed on the Park property and transferred title to an entity he owned and controlled.

---

[4] The Admission Agreement provided, "The Operating Agreement is amended by this agreement and to the extent that there is a conflict between the Operating Agreement and this agreement this agreement shall prevail and control." The Admission Agreement specified the membership interests (in units and percentage share) in Havasu of Fleming Sr., Fleming Jr., the manager, and two other entities, and required them to make a mandatory contribution upon call.

Fleming Sr. "had a duty to disclose material information that affected the Park property by virtue of his fiduciary duties." Havasu and its members "justifiably relied on the representations made by Fleming Sr. because they believed he was fulfilling his fiduciary duties as the agent of the Manager in accord with Fleming Sr.'s proposal of purchasing the Downey loan at a discount, foreclosing on the Park property, and forming a new entity to own, develop and manage the Park property."

*The verdict and the judgment*

The Special Verdict Form's first question asked the jury whether Fleming Sr. "act[ed] as an agent of" Havasu. The jury answered this question in the affirmative.

The Special Verdict Form's second question asked the jury whether Fleming Sr. "gain[ed] an advantage by misleading" Havasu. The jury answered this question in the affirmative.

The jury awarded Havasu approximately $3.2 million in damages and $425,000 in punitive damages.

The court entered judgment in Havasu's favor and against Fleming Sr. in the amount of $3,659,343, "subject to a motion for attorney fees and memorandum of costs."

*Havasu's attorney fees motion and Fleming Sr.'s opposition*

Havasu moved for attorney fees of $737,000, plus $12,000 for additional anticipated work. According to Havasu's appellate opening brief, its "motion was made pursuant to Civil Code section 1717 on the grounds that [Havasu] was the prevailing party in the litigation and was entitled to attorney's fees based on the attorney's fees clause contained in the" contracts. In the motion, Havasu contended that the basis for the TACC's claims against Fleming Sr. "stem from [his] conduct as a member of" Havasu. It asserted, "It is by virtue of his membership interest in [Havasu] that [he] was asked to

6

approach the bank about the defaulted note on the Havasu property." Havasu concluded that the attorney fees provision in the Admission Agreement applied "to this action."

In the motion's factual and procedural history recitation, Havasu stated, "In December 2009 [Fleming Sr.] agreed to go to the bank that owned the defaulted [Havasu] promissory note on behalf of [Havasu] to determine[, inter alia,] whether the Bank would sell the promissory note to [Havasu] and, if so, for how much. Thereafter, [Fleming Sr.] was to report back to PELOQUIN."

Fleming Sr. opposed Havasu's motion. He argued his "liability for constructive fraud 'stems' from his alleged oral agreement with [Havasu] to act as its agent in the renegotiation of the 'Downey loan.'" "[I]t was *solely* the alleged oral agency agreement between [the manager and Fleming Sr.] which underpinned [Havasu's] constructive fraud claim." The "constructive fraud tort cause of action [did] not seek to 'enforce' any term of the 'Agreement for Admission,' the *only* contract [Havasu] has identified as containing an attorney fees provision."

*The court's ruling on Havasu's motion*

The court denied Havasu's motion for attorney fees. "The constructive fraud claim neither enforced the terms of the Admission Agreement nor declared the rights under the Admission Agreement. The Admission Agreement did not provide for attorney's fees in this scenario. [Havasu] argues that because the Operating Agreement required members to present any 'investment opportunity or prospective economic advantage to the Company and its members [citation] and the Operating Agreement was integrated into the Admission Agreement [citation], Fleming Sr.'s conduct of approaching the bank as an agent of [Havasu] and constructive fraud fell within the Admission Agreement. The court, however, does not interpret the constructive fraud claim to be an enforcement of the prospective business opportunity clause. The constructive fraud claim also did not seek a declaration of any rights pursuant to the

7

prospective business opportunity clause.  [Citation.]  [Havasu] was not entitled to recover attorney's fees against Fleming Sr. under the Admission Agreement, Operation Agreement, or the two agreements combined.  The Motion for Attorneys' Fees is denied."

DISCUSSION

In its opening brief on appeal, Havasu contends its constructive fraud claim "was based on a fiduciary relationship that arose from the contract between the parties." It argues "the jury was required to determine the rights of the parties under the contracts before it could make a finding of constructive fraud."  It asserts, "[Havasu's] claim was not based on a duty independent of the [contracts].  Without those agreements in place, there would simply be no duty.  When Fleming, Sr. went to U.S. Bank, he went as [Havasu's] agent for the purpose of resolving the default on the loan and saving [Havasu] from financial ruin.  He promised to talk with U.S. [Bank] and report back to [the] Manager.  Thus, Fleming, Sr.'s breach of duty is contractual in nature and will support an award of attorney's fees under the attorney fee provision."  "It was only in his role as a member and an agent for [Havasu] that Fleming, Sr. was asked to approach U.S. Bank on the defaulted loan.  [Havasu] would not have asked a stranger to approach the bank and negotiate a resolution; it was only because Fleming, Sr., was a member of [Havasu] that he was asked to do so.  At that point, he owed affirmative and fiduciary duties to [Havasu] under the operative contracts."

Fleming Sr.'s respondent's brief counters that Havasu's opening brief "glosses over [the] salient and *dispositive*" facts that the jury found Fleming Sr. "individually liable *solely* under a *tort* theory of recovery" based on "an alleged *oral* agency agreement between" Fleming Sr. and Havasu.

8

In response, Havasu's reply brief states, "The allegations made by [Havasu] are not limited to the breach of an oral agreement to go to the bank on one particular day. As alleged in [Havasu's constructive fraud] cause of action, Fleming, Sr. was already bound by both fiduciary and affirmative duties as a member of [Havasu]. He could not split himself into a separate being who went to the bank solely under an oral agency. The default by [Havasu] and the bank's threat of foreclosure was known to the parties for months. [Citation.] Such a delicate negotiation, and the possible loss of a significant asset, along with the potential to expose the Manager to liability under a personal guaranty, would never have been entrusted to a stranger. [¶] As the jury found, this task was entrusted to an agent who had a vested interest, as a member of [Havasu], in protecting his loss."[5]

The record contains no reporter's transcripts and sheds no light on the actual evidence, arguments, or theories adduced at trial by Havasu to prove its constructive fraud claim against Fleming Sr. The parties dispute the basis for the jury's special verdict findings. We lack any insight into whether either (or neither) party is correct, and of course we cannot speculate as to the jury's thought process.

On appeal the trial court's order denying attorney fees to Havasu is presumed correct; as a corollary rule, absent a request for a statement of decision, we infer "all findings necessary to support the [order]." (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) Accordingly, we presume that the court (in ruling on Havasu's attorney fee motion), and the jury (in rendering its special verdict), impliedly found that Fleming Sr.'s duties to Havasu arose from the oral December 2009 agreement alleged in

---

[5] Havasu, in asserting that Fleming Sr., in his negotiations with the bank, was bound by certain fiduciary and affirmative duties by virtue of his status as a Havasu *member*, fails to specifically identify those contractual duties. The TACC alleged that the Operating Agreement expressly prohibited members, in their capacity as members, from compromising Havasu's debts, and further provided that members had no power to bind Havasu.

9

the TACC. "[O]ur review is limited to whether there is substantial evidence in the record to support these implied findings." (*Ibid.*; *Thompson v. Schurman* (1944) 65 Cal.App.2d 432, 441 [substantial evidence supported trial judge's determination of *oral* contract's terms].)

On appeal, however, Havasu does *not* contend insufficient evidence supports the implied finding Fleming Sr. acted pursuant to the December 2009 oral contract. Indeed, because the record contains no reporter's transcript for either the trial or the attorney fees hearing, Havasu is *precluded* from challenging the sufficiency of the evidence. (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

Nonetheless, we examine de novo whether, as a matter of law, Havasu's constructive fraud claim enforced the terms of, or declared rights under, the contracts. It does not. Havasu's constructive fraud claim sounds in *tort*, not in *contract*.

While "'[p]arties may validly agree that the prevailing party will be awarded attorney fees incurred in any litigation between themselves, whether such litigation sounds in tort or in contract'" (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 608), the language of the attorney fee clause at issue is not that broad. As noted, the provision allows the recovery of attorney fees by the prevailing party on "any action [or] counterclaim . . . for any relief against the other . . . *to enforce the terms hereof or to declare rights hereunder . . . .*" (Italics added.) Several cases have construed the same or similar language as excluding tort claims from the coverage of the clause. (*Santisas*, at p. 622, fn. 9 [tort claims not covered under attorney fee clause in action to "enforce any . . . provision . . . of this" contract]; *Loube v. Loube* (1998) 64 Cal.App.4th 421, 430 [attorney fee provision "providing for the payment of fees for an action brought to enforce the terms of the parties' agreement, cannot be read as a contractual agreement to award fees in an action brought for legal malpractice"]; *Excess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708-709 [fees disallowed on breach of fiduciary duty and constructive fraud claims under attorney fee clause providing for fees in an

10

"'action or proceeding to enforce the terms [of the contract] or declare rights'" under the contract]; *McKenzie v. Kaiser-Aetna* (1976) 55 Cal.App.3d 84, 89 [fees disallowed because "an action for negligent misrepresentation is not an action to enforce the provisions of a contract"]; *DeMirjian v. Ideal Heating Corp.* (1949) 91 Cal.App.2d 905, 910 [provision in lease authorizing attorney fees "'[i]n any action at law or equity necessary to enforce Lessors' rights hereunder'" does not cover tort claims].)

Here, the action on the cross-complaint was submitted to the jury *solely* on the cause of action for constructive fraud. The record does not reflect why the case was not submitted to the jury on the breach of contract cause of action. Perhaps Havasu wished to preserve its right to recover punitive damages. (See Civ. Code, § 3294, subd. (a) [punitive damages not permitted in action on contract].) We will not permit Havasu on the one hand to seek recovery of punitive damages on a tort theory, and then on the other hand to assert that its action was brought to enforce a contract.

The TACC alleges constructive fraud arising out of a duty independent of any duties arising from the operating agreement or admission agreement. Constructive fraud occurs when a person gains an advantage by (1) breaching a duty, "without an actually fraudulent intent," and (2) "misleading another [person] to his [or her] prejudice." (Civ. Code, § 1573, subd. (1).) "'In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another.'" (*Barrett v. Bank of America* (1986) 183 Cal.App.3d 1362, 1368-1369.) "Constructive fraud 'arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter *to his prejudice*.'" (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548.)

11

The TACC alleged that in December 2009, Fleming Sr. agreed to act as the Manager's agent for purposes of negotiating with U.S. Bank "for the benefit of" Havasu and its members. An agency relationship is a fiduciary one, obliging the agent to act in the interest of the principal. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977.) A fiduciary can also be a person who undertakes to act primarily for the benefit of another. (*Tyler v. Children's Home Society*, *supra*, 29 Cal.App.4th at p. 548.) Thus, under the oral December 2009 contract, Fleming Sr. was the fiduciary of both Havasu and the Manager. The TACC also alleged that Havasu and its members "justifiably relied on the representations made by Fleming Sr. because they believed he was fulfilling his fiduciary duties as the agent of the Manager in accord with Fleming Sr.'s proposal of purchasing the Downey loan at a discount, foreclosing on the Park property, and forming a new entity to own, develop and manage the Park property." In other words, Havasu and its members, with justification, placed trust and confidence in the integrity and fidelity of Fleming Sr. to act on their behalf, thereby creating a confidential relationship between them for purposes of the duty element of constructive fraud.

The independent duty arising from the alleged agency relationship would suffice to satisfy the duty element of the constructive fraud claim. Proof of duties arising from the operating agreement or the admission agreement were not necessary to prevail on the constructive fraud cause of action. The jury found true all elements of the constructive fraud cause of action and awarded punitive damages. Manifestly, this was a tort claim and a tort recovery, not covered by the provision for an award of attorney fees in an action to enforce the contract or declare rights thereunder.

DISPOSITION

The postjudgment order denying Havasu's motion for attorney fees is affirmed. Respondent shall recover costs on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.